# BORRELLI & ASSOCIATES
## P.L.L.C.

www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

September 4, 2018

*Via ECF*
The Honorable Debra Freeman
United States Magistrate Judge for the
Southern District of New York
500 Pearl Street
New York, New York 00007

  Re: *Peña v. Burnside Food Corp., et al.*
     Docket No.: 18-cv-01687 (DCF)

Dear Judge Freeman:

  This firm represents the Plaintiff, Jose Peña, in the above-referenced single-plaintiff matter in which he brings claims against his former employers, Burnside Food Corp. d/b/a C-Town Supermarket ("C-Town") and George Guzman (together, where appropriate, as "Defendants") (Plaintiff and Defendants, together, as "the Parties"), under the Fair Labor Standards Act ("FLSA") and New York Labor Law. After extensive negotiations, including, as the Court well knows, a court-supervised settlement conference, the Parties have now entered into a settlement agreement to resolve this matter. Accordingly, we write, on behalf of the Parties, to request approval of the Parties' settlement of Plaintiff's FLSA claims, in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and for an Order dismissing this case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), while maintaining jurisdiction to enforce the terms of the Parties' Settlement Agreement ("Agreement"), a fully executed version of which is attached hereto as **Exhibit A**.[1]

---

[1] Plaintiff also brings claims for Defendants' alleged violations of the New York Labor Law ("NYLL"), which although resolved in their Agreement, do not require court approval for dismissal.

### I. Procedural History and Settlement Agreement Terms

In brief, in this action that Plaintiff filed on February 23, 2018, Plaintiff claims that he worked for Defendants - - a supermarket in the Bronx and its manager and day-to-day overseer who was Plaintiff's direct supervisor - - from in or around June 2015 until on or about November 12, 2017.[2] Dkt. 1. As it pertains to his FLSA claim, Plaintiff alleged that from February 1, 2017 and continuing to the end of his employment, he worked for Defendants as a meat department "manager," in which role, despite its title, Plaintiff performed primarily non-exempt duties.[3] *See generally* Dkt. 1. In his role as a meat department "manager," Plaintiff alleged that he worked approximately eighty-seven hours per week but that Defendants paid him a flat weekly salary that covered only his first forty hours worked per week and nothing for his hours worked over forty. *Id*. Defendants filed their answer on April 30, 2018, in which they denied all material allegations. Dkt. 18. On May 18, 2018, Judge Broderick referred this case to Your Honor for settlement purposes and directed the Parties to contact the Court within one week of the order to schedule a settlement conference. Dkts. 19, 20. As such, the Parties contacted the Court by phone on May 21, 2018, and scheduled a settlement conference for July 11, 2018. On that call, in addition to scheduling a settlement conference, the Court directed the Parties in the interim to exchange limited discovery by June 8, 2018, to aid in settlement discussions. The Court further directed the Parties to appear for a telephone conference on June 28, 2018, to apprise the Court of the status of their settlement negotiations. Pursuant to the Court's May 21 Order, the Parties exchanged limited discovery, which included Defendants' timecard reports for Plaintiff for every week from June 26, 2015 until July 27, 2017, and which list Plaintiff's hours worked each week.

At the settlement conference on July 11, 2018, with this Court's assistance, the Parties reached a resolution in principle to settle the case for the sum of $15,000.00 (hereinafter as the "Settlement Sum").[4] The Parties have worked together since to reduce their agreement to a writing, which is submitted herewith.

The Settlement Sum will be distributed as follows:

- $9,603.14 to Plaintiff;

---

[2] Plaintiff brought collective action allegations in the Complaint, *see* Dkt. 1, ¶¶ 12-15; however, Plaintiff agreed to a settlement on behalf of himself only in lieu of moving for conditional certification under 29 U.S.C. § 216(b).

[3] In the Complaint, Plaintiff alleged that he worked for Defendants as a meat department "manager" from in or around June 2015 to on or about November 12, 2017. *See* Dkt. No 1, ¶¶ 2,18. However, upon review of Defendants' records, Plaintiff recalled that prior to February 1, 2017, he worked as a general non-exempt employee and was indeed paid at his regular rate of pay for the first forty hours worked per week and his overtime rate of pay for all hours worked in excess of forty each week. The claims in this case are thus limited to his time after being "promoted" to "manager."

[4] On July 16, 2018, the Parties consented to Your Honor's jurisdiction for all purposes. *See* Dkt. 23.

- $5,396.86 to Plaintiff's counsel for their attorneys' fees and costs - - with one third of the net Settlement Sum as attorneys' fees (i.e. $4,801.57), and $595.29 as reimbursement for counsel's out-of-pocket litigation expenses.

Plaintiff, on behalf of the Parties, respectfully submits that this amount and allocation is fair and reasonable under the circumstances for the reasons detailed below. Additionally, the Court obviously agrees that this amount is fair and reasonable, as the Court recommended the Settlement Sum of $15,000, which the Parties accepted on July 12, 2018.

## II.  The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *Id.* The Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable based on the *Wolinsky* factors.

### A.  *Range of Possible Recovery*

Here, as the Court knows form Plaintiff's *ex parte* submission prior to the settlement conference, Plaintiff alleges that he worked for the Defendants as meat department manager from February 1, 2017 until November 12, 2017. Despite the title, Plaintiff alleges that he performed primarily non-exempt duties, such as taking orders from customers in the meat department, weighing and wrapping the meat for customers, and cleaning up the meat department as needed. Plaintiff commenced this action on February 23, 2018. The FLSA limitations period is two years without proving willfulness, 29 U.S.C. § 255(a). As such, all of Plaintiff's claims are timely without having to prove Defendants willfully violated the FLSA. Plaintiff alleges that he worked eighty-seven hours per week from February 1, 2017 until November 12, 2017. In exchange for his work, Plaintiff claims that Defendants compensated Plaintiff a total of $1,200 per workweek,

3

which was meant to and by operation of law covered only his first forty hours of work per week, giving rise to an hourly rate of $30.00.

As Your Honor observed during the settlement conference, Defendants strenuously contest Plaintiff's claims in this matter. Defendants maintain that Plaintiff was properly classified as exempt and in the alternative, if Plaintiff was not properly classified as exempt and therefore entitled to overtime compensation at one and one-half his regular hourly rate, that Plaintiff was properly compensated for all hours worked, including those in excess of forty. In support of their position, Defendants produced Plaintiff's timecard reports, as well as a witness, Jhonnattan Peña, Plaintiff's former coworker, who was willing to provide an affidavit stating that Plaintiff's job duties for Defendants were managerial in nature. Defendants therefore claim that Plaintiff is not owed *any* wages because Plaintiff is exempt and they paid him on a salary basis. To the extent he was not exempt, Defendants claim they paid Plaintiff for overtime hours worked and any uncompensated time would be *de minimis*.

Moreover, if Defendants paid Plaintiff hourly and not on a salary basis, Plaintiff asserts that he could not be considered an exempt executive as he would not meet the salary basis test, *McLean v. Garage Mgmt. Corp.*, 819 F. Supp. 2d 332, 337-38 (S.D.N.Y. 2011) ("An employer claiming [an] exemption must meet both a duties and salary basis test."), and that he worked during his lunch breaks each day even though Defendants required him to punch in and out for his breaks. Specifically, Plaintiff asserts that he performed approximately one hour of off-the-clock work almost every day between February 1, 2017 and November 12, 2017, running errands for Defendants, including going to the bank and completing other tasks at the supermarket, for a total of approximately 200 hours of off-the-clock work. As the Court knows, Defendants strenuously contest this allegation as well.

Were the trier of fact to credit all of Plaintiff's allegations, Plaintiff calculates his maximum provable recovery, when taking into account Defendants' records, to be $22,500, plus up to 100% as liquidated damages, which would bring the total to $45,000. But if Defendants successfully proved that Plaintiff was exempt from the FLSA's overtime provisions, Plaintiff's claims could be worth nothing. Additionally, if Defendants failed to prove that Plaintiff was properly classified as exempt but successfully proved that Plaintiff's weekly salary was meant to cover all of Plaintiff's hours worked, except those which Plaintiff worked off-the-clock during his lunch break, Plaintiff's provable recovery would be $9,000. Thus, a realistic range of recovery for Plaintiff in this matter was between $0.00 and $45,000. Under the proposed settlement agreement, which is for $15,000, after paying his counsel, Plaintiff is receiving a total of $9,675.82, representing approximately 22% of his maximum actual *and* liquidated FLSA damages, or 43% of his maximum actual damages. We submit that this is a reasonable outcome in light of the evidence thus-far adduced in this matter.

### B. *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, litigation expenses would have substantially increased, as formal responses to paper discovery was forthcoming, depositions would be taken, and dispositive motion practice and trial would likely occur. Thus, Plaintiff faced a difficult challenge in recovering a greater judgment than the Settlement Sum obtained here. Indeed, while Plaintiff contends that he is owed more than the Settlement Sum, Plaintiff understands that if he were to continue with the litigation he may never receive any money.

### C. *Arm's-Length Bargaining and no Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the FLSA claims, the settlement negotiations took place over several months and concluded only after the Parties participated in an in-person settlement conference that this Court supervised. Thus, the process was more than sufficiently adversarial.

Furthermore, the Settlement Agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiff's release in paragraph 3 of the Settlement Agreement is limited to any wage and hour claims that Plaintiff has or may have against Defendants and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206); *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks,* 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Camacho v. Ess-A-Bagel, Inc.,* 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015).

### D. **The Requested Attorneys' Fees and Costs are Reasonable.**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, they do so "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v.*

5

*Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $4,837.83, limited to one-third of the net settlement amount. Plaintiff's counsel's request that the Court approve fees of one-third of the net settlement is "consistent with the trend in this Circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); *Ezpino*, 2017 WL 3037483, at *3 (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)) ("'A one-third contingency fee is a commonly accepted fee in this Circuit.'"); *Kochilas*, 2015 WL 5821631, at *8 (same and collecting cases). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Additionally, the reasonableness of Plaintiff's requested attorneys' fee is further solidified by "[a]pplying the lodestar method as a cross check." *Guaman v. AJNA-BAR NYC*, 2013 WL 445896, at *8 (S.D.N.Y. Feb. 5, 2013) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). To date, Plaintiff's counsel has billed over one hundred hours on this matter - - an adversarial litigated case wherein the Parties: meticulously calculated Plaintiff's estimated damages; and appeared before this Court on several occasions - - amounting to approximately $20,688.50 in fees if calculated pursuant to the lodestar, an amount well in excess of the $4,801.57 contingency fee that counsel seeks. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $200.00 per hour for Taylor M. Ferris, Esq., undersigned counsel and lead associate on this matter who handled all of its day-to-day responsibilities and attended all court conferences; and $90.00 per hour for paralegals.

Courts routinely approve these rates. *See, e.g., Davis et al. v. Uptown Communications & Electric, Inc. et al.*, 16-cv-3990-LB, Dkt. No. 105 (E.D.N.Y. Nov. 15, 2017) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for the firm's senior associate, and $90.00 per hour for the Firm's paralegals); *Simono v. Gemco Realty II, LLC*, Docket No. 16-cv-05385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (approving as reasonable rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 for the firm's junior associates, and $100.00 per hour for the firm's paralegals); *Russo v. Ruiz et al.*, 15-cv-9789-CS, Dkt. No. 65 (S.D.N.Y. Sept. 19, 2017) (approving rates of

$400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, $295.00 per hour for the firm's senior associate, and $90.00 per hour for the Firm's paralegals); *Aguilar v. Trolio Landscaping, Inc.*, Docket No.: 16-cv-02230 (CS), Dkt. No. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, and $100.00 per hour for the Firm's paralegals); *Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *4 (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75.00 per hour and $90.00 per hour for the Firm's paralegals).

The fees requested represent merely 23.2% of the lodestar in this case, which falls well below what courts routinely approve as reasonable. *See, e.g., Lizondro-Garcia v. Kefi LLC*, 2015 WL 4006896, at *1-5 (S.D.N.Y. 2015) (approving 1.68 lodestar multiplier); *Cuthbert v. New Soldier's Rest., Inc.*, 2015 WL 1321676, at *2 (E.D.N.Y. Mar. 24, 2015) (approving 2.5 lodestar multiplier in default judgment fee award); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19-20 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *see also Wolinsky*, 900 F. Supp. 2d at 336 (explaining that a court may adjust the fee upward or downward from the lodestar amount based on other considerations). Plaintiff's counsel's contemporaneously-kept billing records are attached hereto as **Exhibit B**.

Finally, with respect to costs, Plaintiff's counsel has incurred $595.29 in out-of-pocket expenses prosecuting this case, which consist of the filing fee, postage, PACER fees, and travel expenses. Plaintiff's counsel's itemized expense report is attached here as **Exhibit C**.

Accordingly, Plaintiff's counsel's request for a total of $5,324.18 as compensation for their work and expenses in this matter is entirely reasonable.

### III. <u>Conclusion</u>

For the forgoing reasons, Plaintiff, on behalf of the Parties, respectfully requests that the Court approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, but retain jurisdiction to enforce the terms of the Parties' Agreement. The Parties have attached a stipulation and order of dismissal as an exhibit to the Parties' Agreement.

Respectfully submitted,

_____
Taylor M. Ferris, Esq.
*For the Firm*

To: All Counsel *via* ECF